UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:08-cr-00274-ESH |
| KEVIN A. RING, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## UNITED STATES' RESPONSE TO DEFENDANT RING'S
## REVISED MOTION FOR JUDGMENT OF ACQUITTAL

In his revised motion for judgment of acquittal (Dkt. No. 155), defendant Kevin Ring advances a theory of honest services fraud that is inconsistent with *Skilling*, devoid of pre- or post-*McNally* support, and contrary to the well-settled meaning of material deceit in mail and wire fraud schemes.  In his argument, Ring continues to miscast this as a false statement case under 18 U.S.C. § 1001(a)(1), insisting that the Government be required to prove that he had a legal duty to disclose facts or aided and abetted an affirmative material misrepresentation by a public official.  But Ring is not charged with false statements or concealment under § 1001, and as a result the *Safavian* case upon which he relies most heavily sheds no light on the charges presented here.

Ring also now insists that any material misrepresentation can only be established with proof that he violated a legal duty, or aided and abetted a public official's violation of a legal duty, without providing any legal authority to support such an implausible proposition.  This position not only contravenes the well-settled meaning of materiality, it also ignores *Skilling's* recognition that the violation of a fiduciary duty is sufficient to satisfy materiality.  Ring's insistence on the existence of a legal duty is the major premise for his argument that the Government failed to satisfy the materiality element and, as this premise goes, so goes his argument.

At bottom, Ring is charged with wire fraud, and all wire fraud charges require the Government to prove that the scheme involved some form of deceit.  There is nothing new or unusual about this element of wire fraud, and the Government offered ample proof to establish that Team Abramoff's wide-ranging bribery scheme involved material deceit.  Indeed, like any bribe scheme, deceit was critical to the scheme's success.  *See, e.g., United States v. Frega*, 179 F.3d 793, 804 (9th Cir. 1999) ("[B]ribery and concealing bribery are part and parcel of the same scheme.").

Contrary to Ring's motion, the Supreme Court's opinion in *Skilling* does not alter the elements of the offense charged here.  The indictment charges Ring with engaging in a scheme to deprive the public of the honest services of their fiduciaries—the public officials—through bribery.  Under this Court's jury instructions and under *Skilling*, there is no question that those public officials had a fiduciary duty to act in the best interests of the public, rather than in the interest of those who provided them with things of value.  Nor is there any question that the scheme charged here, as properly submitted to the jury, required bribery.

Ring's argument that the Government failed to satisfy *Skilling* is equally troubling because it is based on the untenable position that *Skilling* actually requires the scheme to succeed.  Indeed, the last section of Ring's motion argues that the Government can only make a prima facie case of honest services fraud if it proves that a public official joined the scheme and accepted a bribe.  This position is flagrantly inconsistent with the plain language of §§ 1343 and 1346, § 201(b), *Skilling*, and this Court's prior rulings.

Because the bribery scheme is charged under the heading of honest services wire fraud, the Government has the additional burden to show, through direct and circumstantial evidence, that the overall scheme involved some form of material deceit and that the participants had the intent to deceive.  As discussed below, the Government offered substantial direct and

2

circumstantial evidence that this bribery scheme involved and required deceit and concealment, including concealing from the public the receipt of things of value by public officials, concealing from the public the identities of public officials who received the things of value, using code words to disguise the nature of the things of value, and facilitating the fraudulent pretense by public officials that they are honest and loyal, when in fact their acts were motivated by bribes provided by Ring and his co-conspirators.

For these reasons, and as further explained below, defendant Ring's revised motion for judgment of acquittal should be denied.

## I.      Standard of Review

In reviewing a motion for judgment of acquittal, the Court views all evidence in the light most favorable to the Government, giving it the benefit of all reasonable inferences.  *See United States v. Kayode*, 254 F.3d 204, 212-13 (D.C. Cir. 2001); *United States v. Long*, 905 F.2d 1572, 1576 (D.C. Cir. 1990) (noting that "a jury is entitled to draw a vast range of reasonable inferences from evidence").  Accordingly, motions for judgment of acquittal are granted on the basis of insufficient evidence only if the court concludes, as a matter of law, that no reasonable juror could have convicted on the evidence presented.  *See United States v. Weisz*, 718 F.2d 413, 438 (D.C. Cir. 1983) ("[A] judgment of acquittal is appropriate only when there is no evidence upon which a reasonable juror might fairly conclude guilt beyond a reasonable doubt.") (citing *United States v. Reese*, 561 F.2d 894, 898 (D.C. Cir. 1977)).  In moving for a judgment of acquittal, Ring bears "an exceedingly heavy burden."  *United States v. Salamanca*, 990 F.2d 629, 637 (D.C. Cir. 1993).  The question for the Court is whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

> An appellant challenging the sufficiency of the evidence on which he was convicted faces an uphill struggle. Although a jury may not base a verdict on mere speculation, it may permissibly draw a vast range of inferences from evidence. No distinction is drawn between direct and circumstantial evidence. To be sufficient, the government's evidence need not exclude all reasonable hypotheses of innocence or lead inexorably to the conclusion that the defendant is guilty.

*Id.* at 635 (quotation marks and citations omitted). For the following reasons, Ring cannot carry his burden, and the Court should deny his motion.

## II.  A Reasonable Jury Could Have Found that Ring's Scheme Involved a Material Misrepresentation, Omission, Concealment, or Fraudulent Pretense

The Court properly instructed the jury that, to convict Ring of honest services fraud, it must find beyond a reasonable doubt, in addition to three other elements, that "the scheme or artifice to defraud involved a material misrepresentation, false statement, fraudulent pretense, or concealment of fact." *United States v. Ring*, No. 1:08-cr-274-ESH, at 47-48 (D.D.C. Oct. 1, 2009) (filed jury instructions). The Court further instructed the jury that "[a] misrepresentation, statement, or omission is 'material' if it has a natural tendency to influence or is capable of influencing a decision or action by the public, including the public official's employer (*i.e.*, the United States government)." *Id.* at 54. Drawing all inferences in the Government's favor, a rational factfinder could easily have concluded that Ring's scheme involved a material misrepresentation, omission, concealment, or fraudulent pretense.

### A.  Ring Greatly Misconstrues the Scope and Meaning of "Materiality"

Ring's revised motion for judgment of acquittal is largely based on whether the Government satisfied the element of materiality, but his argument is built on a fundamental misunderstanding of the relevant legal authority. Before engaging Ring's analysis on this point, it is necessary to clarify the meaning of this term—materiality.

#### 1.  *Common Law Principles of Fraud are Determinative of Materiality's Scope and Meaning*

4

In holding that materiality is an element of a "scheme or artifice to defraud" under §§ 1341 and 1343, the Supreme Court observed that the term, "defraud," has a well-settled meaning under common law that requires "materiality," another term with a well-settled meaning under common law. *Neder v. United States*, 527 U.S. 1, 21-24 (1999). Therefore, it would be irresponsible to determine whether the Government satisfied the element of materiality without considering its well-settled meaning. Ring asserts that the Government can only satisfy this element by establishing that he made a material misrepresentation based on a legal duty to the public, or aided and abetted a public official's material misrepresentation based on a "legal duty" to the public. But Ring's interpretation of this term ignores *Neder* and this Court's jury instruction regarding materiality.

As noted above, this Court's jury instruction for materiality includes the terms "material misrepresentation, false statement, fraudulent pretense, or concealment of fact" as disjunctive predicates sufficient to satisfy materiality. *Ring*, No. 1:08-cr-274-ESH, at 54 (D.D.C. Oct. 1, 2009) (filed jury instructions). Indeed, even the wire fraud statute by which Ring was charged with honest services fraud says the following: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of *false or fraudulent pretenses, representations, or promises* . . . ." 18 U.S.C. § 1343 (emphasis added); *see also Neder*, 527 U.S. at 20-21 (quoting this statutory language in discussion of whether materiality is an element of mail and wire fraud).

Materiality is a standard element of fraud cases and should not be contorted to a novel legal theory like the one advanced by Ring. The Court properly instructed that "[a] misrepresentation, statement, or omission is 'material' if it has a natural tendency to influence or is capable of influencing a decision or action by the public, including the public official's employer (*i.e.*, the United States government)." *United States v. Ring*, No. 1:08-cr-274-ESH, at

47-48 (D.D.C. Oct. 1, 2009) (filed jury instructions) at 54.   Therefore, the scope and meaning of materiality has been well-defined under the common law.

2.   <em>Materiality Does Not Require the Violation of a Duty to Disclose</em>

In his revised motion, Ring argues that materiality can only be established where a defendant has violated a duty to disclose.  *See* Ring Revised MJOA at 7-9 ("[T]he government's proof must demonstrate that any act of concealment violated some disclosure duty owed to the public . . . .").  This argument, however, is based on a significant mischaracterization of the law. The violation of a duty to disclose material information may be sufficient to satisfy the element of materiality, but it is not necessary.

In *United States v. Colton*, 231 F. 3d 890 (4th Cir. 2000), for example, the Fourth Circuit, following *Neder*, looked to the common law understanding of fraud to determine whether a fiduciary, statutory, or other independent legal duty to disclose material information was necessary for a defendant to be found guilty of committing bank fraud.  The court determined that common law fraud is not limited to situations where there is an affirmative misrepresentation or a violation of some independently-prescribed legal duty.  The court explained, "even in the absence of a fiduciary, statutory, or other independent legal duty to disclose material information, common-law fraud includes acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to prevent[] the other [party] from acquiring material information."  *Id.* at 898 (citing Restatement (Second) of Torts § 550 (1977)); *see also United States v. Kelpinger*, 776 F.2d 678, 697-98 (7th Cir. 1985) (holding that omissions or concealment of material information can constitute fraud cognizable under the mail fraud statute, without proof of a duty to disclose the information pursuant to a specific statute or regulation).

In support of its conclusion that "fraudulent concealment"—without any misrepresentation or duty to disclose—can constitute common law fraud, the Fourth Circuit cited

6

*Stewart v. Wyoming Cattle Ranch, Co.*, 128 U.S. 383 (1888), in which the Supreme Court

explained that concealment is "equivalent to a false representation" because:

> [T]he concealment or suppression is in effect a representation that
> what is disclosed is the whole truth.  The gist of the action is
> fraudulently producing a false impression upon the mind of the other
> party; and if this result is accomplished, it is unimportant whether the
> means of accomplishing it are words or acts of the defendant, or his
> concealment or suppression of material facts not equally within the
> knowledge or reach of the plaintiff.

*Id.* at 388.  Therefore, materiality does not require the violation of a duty to disclose; rather,

mere acts taken to create a false impression are sufficient to establish this element, so long as the

false impression is capable of influencing a decision.

Moreover, the mere truthful disclosure of facts that omit information capable of

influencing a decision can be sufficient to satisfy the element of materiality.  In *Lustiger v.*

*United States*, 386 F.2d 132 (9th Cir. 1967), for example, the Ninth Circuit held that misleading

or deceptive words can be sufficient to establish materiality.  *Lustiger* involved a fraudulent

scheme where the defendant advertised property for sale without informing the public that the

area lacked water, power, telephone lines, and road access, among other things.  The Ninth

Circuit affirmed the defendant's mail fraud conviction, holding that, "[w]hile the statements in

the advertising materials may not have been literally false, taken as a whole they were

fraudulently misleading and deceptive."  *Id.* at 136.  The court explained:

> [D]eceitful statements of half truths or the concealment of material
> facts is actual fraud violative of the mail fraud statute . . . .  [T]he
> deception need not be premised upon verbalized words alone.  The
> arrangement of the words, or the circumstances in which they are
> used may convey the false and deceptive appearance.

*Id.* at 138 (internal citations omitted); *see also Tyler v. Savage*, 143 U.S. 79, 98 (holding under

common law principles that the president of a corporation obtained a loan by fraud because he

suppressed material facts which he was bound in good faith to disclose to the investor).

The court went on to clarify that materiality does not require a misrepresentation:

> If a scheme is devised with the intent to defraud, and the mails are used in executing the scheme, the fact that there is no misrepresentation of a single existing fact is immaterial. It is only necessary to prove that it is a scheme reasonably calculated to deceive, and that the mail service of the United States was used and intended to be used in the execution of the scheme.

*Id.*; *see also United States v. Townley*, 665 F.2d 579, 585 (5th Cir. 1982) (recognizing in a decision denying the defendant's due-process claim based on pre-indictment delay that, in the context of a mail fraud prosecution, "[t]he statements need not be false or fraudulent on their face, and the accused need not misrepresent any fact, since all that is necessary is that the scheme be reasonably calculated to deceive persons of ordinary prudence and comprehension, and that the mail service of the United States be used in the execution of the scheme."). Therefore, materiality is not dependent on the existence of a duty to disclose, and materiality does not require proof of an affirmative misrepresentation. Instead, materiality is satisfied merely with proof that a scheme was *reasonably calculated to deceive*, since such a calculation will have to include the concealment or omission of information that is capable of influencing a decision.

Ring relies heavily on the D.C. Circuit's ruling in *United States v. Safavian*, 528 F.3d 957 (D.C. Cir. 2008), for the proposition that a jury must find that a specific material misrepresentation is linked to a specific disclosure obligation. Such an argument is entirely misplaced because this is a bribery honest services fraud case, not an honest services fraud case involving a concealed conflict of interest. Because Ring was charged with stream of bribery honest services fraud rather than honest services fraud involving a "material concealment of a conflict of interest," the Government needed only to prove that Ring or a co-conspirator committed the elements of a bribery offense, and also violated a fiduciary duty to the public or a

8

government employer,[1] but no additional legal duty is required to have been proven.  The

violation of a specific duty to disclose, *a la Safavian*, may be sufficient to establish materiality,

but it is not necessary.

Ring draws the wrong conclusion from the D.C. Circuit's ruling in *Safavian* and attempts

to impose the finding of a separate "legal duty" in a false statements prosecution to the "material

misrepresentation" prong of stream of bribery honest services fraud cases.  In May 2006,

Safavian was convicted under 18 U.S.C. § 1001(a)(1), which permits a jury to convict if the

defendant "falsifies, conceals or covers up by any trick, scheme or device."  Section 1001(a)(1)

has long required that a jury find that there was a "duty to disclose" material information.  On

appeal, the D.C. Circuit found that the various statutes and regulations relied upon by the jury

were insufficient to find that Safavian had a "duty to disclose" the material information charged

in violation of § 1001(a)(1).  The D.C. Circuit found that a concealed conflict of interest by a

public official could not be prosecuted pursuant to § 1001(a)(1) when a public official simply

fails to disclose the conflict absent a specific duty to disclose that specific information.  Upon

---

[1]  The Court properly instructed the jury:

> A public official owes a duty of honest, faithful and disinterested
> service to the public. Officials of government, whether it be local,
> state or federal, are relied upon to act in the public interest, not for
> their own enrichment.  When a public official acts to enrich him or
> herself through his or her office by accepting things of value, he or
> she acts against the public's  expectation that he or she will work for,
> and serve, the public welfare.  So, when a public official agrees to be
> corruptly influenced in the performance of his or her official actions
> or duties by the receipt of a thing of value, he or she breaches this
> duty of honest, faithful, and disinterested service because he or she
> outwardly purports to be exercising independent judgment in official
> work, but instead has received benefits for the outcome or deed.
> Thus, the public is not receiving what it expects and is entitled to,
> that is, the public official's honest and faithful service.

10/01/09 AM Tr. at 40:1-18.

retrial, on December 19, 2008, the jury convicted Safavian of three counts of violating
§ 1001(a)(2), which does not require the jury to find a legal "duty to disclose" but instead merely
requires a false statement.  The second jury found that Safavian's statements to his ethics officer,
on his financial disclosure form, and to law enforcement agents were material and false—even
absent any specific duty to disclose those specific material facts.[2]

Similarly, in the instant matter, the jury was not asked to determine whether Ring
schemed to "conceal material conflicts of interest" in violation of honest services fraud.  Rather,
the jury was charged with determining whether Ring schemed to defraud the public of the honest
services of some public officials and "that the scheme or artifice to defraud involved a material
representation, false statement, fraudulent pretense, or concealment of fact."  The Government
does not dispute, and indeed requested, that the instructions also require that the jury find that
Ring or a co-conspirator made a material misrepresentation, concealment or omission of a
material fact, or fraudulent pretense.  Yet, unlike in *Safavian* and as is required by § 1001(a)(1),
the *Ring* instructions, and *Skilling*, do not require that the jury find that there was a "specific duty
to disclose" information that was tied to the material misrepresentation of §§ 1343 and 1346.

Defendant Ring offers no case law to support the creation of an additional element of a
"legal duty to disclose" in the prosecution of honest services wire fraud, nor did Ring
specifically propose such an element for the jury to consider.[3]  Because there was, and should
have been, no jury instruction to find an additional legal duty to disclose in bribery honest

---

[2]The concept of a "literal truth" defense is well established in the false statements § 1001
context, which prohibits criminal liability if the statement is literally true but nevertheless
misleading.  Such a defense is not applicable in charging a scheme to defraud, and is yet another
reason that Ring's reliance on *Safavian* is unfounded.

[3]Nor did Ring ask the Court to reconsider that legal ruling by the required deadline of July
13, 2010.  (Dkt. No. 152 ¶ 2).

services fraud beyond that duty inherent to a public official, *Safavian* is inapposite, and in the context of a post-verdict Rule 29 motion, the Court should reject Ring's post-hoc fabrication of an additional element for the jury to consider.

3.      *The Mere Failure to Disclose a Bribe Satisfies the Element of Materiality*

In *Skilling*, when discussing the evolution of honest services fraud into the private sector, the Court made the following observation that is pertinent to the materiality analysis here: "The actual deception that is practised is in the continued representation of the employee to the employer that he is honest and loyal to the employer's interests." *Skilling v. United States*, 2010 WL 2518587 at *36 (June 24, 2010) (citing *United States v. Proctor & Gamble Co.*, 47 F. Supp. 676, 678 (D. Mass. 1942)). The court focused on the fraudulent pretense that the defendant was "honest and loyal" to his employer. This deception of appearing "honest and loyal" satisfies the fraudulent pretense predicate of materiality, and applies with equal force to the public sector. Therefore, materiality can be established merely "in the continued representation of the [public official] to the [public] that he is honest and loyal to the [public's] interests." *See United States v. Foxworth*, 334 Fed. Appx. 363, 2009 WL 1582923 at *366 (2d Cir. 2009) (holding that a public official's failure to disclose a $3,000 bribe he received from the defendant was sufficient to establish a material omission because, "had the public at large or [the government] known that the [official] . . . was . . . being bribed . . . that knowledge would have had a natural tendency to influence their behavior"). Thus, the non-disclosure of a bribe by a public official who represents that he is "honest and loyal to the [public's] interests" satisfies the element of materiality.

*Skilling* and *Proctor & Gamble* are clear that an affirmative misrepresentation is not necessary to satisfy materiality. Equally compelling on this point is the fact that there are no post-*McNally* cases requiring an affirmative misrepresentation, including the ones cited by the

Court in *Skilling* (*e.g.*, *United States v. Whitfield*, 590 F.3d 325 (5th Cir. 2009), *United States v. Ganim*, 510 F.3d 134 (2d Cir. 2007), *United States v. Kemp*, 500 F.3d 257 (3rd Cir. 2007)).

The non-disclosure of a bribe satisfies the element of materiality because such an omission violates the public official's fiduciary duty to the public.  The public official is putting forth a fraudulent pretense that he is acting as an "honest and loyal" public servant, when in fact his actions are motivated by a bribe.  That pretense does not have to be oral, but can exist merely by the occupation of a official position that requires the honest and loyal performance of official duties.  Indeed, the *Skilling* Court was unequivocal about this principle: "Although some applications of the pre-*McNally* honest-services doctrine occasioned disagreement among the Courts of Appeals, these cases do not cloud the doctrine's solid core: The 'vast majority' of the honest-services cases involved offenders who, in violation of a *fiduciary duty*, participated in bribery or kickback schemes."  *Skilling v. United States*, 2010 WL 2518587, at *43 (June 24, 2010) (emphasis added) (citing *United States v. Runnels*, 833 F. 2d 1183, 1187 (6th Cir. 1987)); *see also id.* at *43 n.42 ("The existence of a fiduciary relationship, under any definition of that term, was usually beyond dispute; examples include public official-public . . . ."); *McNally v. United States*, 483 U.S. 350, 363 (1987) ("[I]n the private sector, purchasing agents, brokers, union leaders, and others with clear *fiduciary duties* to their employers or unions have been found guilty" of honest services fraud) (Stevens, J., dissenting) (emphasis added).  Therefore, a public official's mere non-disclosure to the public that he has accepted a bribe is not only one way to establish honest services fraud, it is in fact the "solid core" of honest services fraud.

> B.   Materiality Does Not Require the Government to Prove that Ring, or Any Co-Conspirator, Violated a Legal Duty to the Public

Ring builds his materiality argument on the premise that materiality requires the Government to prove that the defendant must have "violat[ed] a legal duty to the alleged victim

of the fraud" or "to the public.  *See* Ring Revised MJOA (Dkt. No. 155) at pp. 5-9.  In support of

his argument, Ring relies on many cases that discuss materiality, but none of them require or

even discuss a legal duty.  *See, e.g., id.* at 13 (citing, among others, "*United States v. Hively*, 437

F.3d 752, 764 (8th Cir. 2006) (pertinent question is whether misrepresentation is 'capable of

influencing the intended victim')").  These cases do not stand for the proposition that materiality

requires the violation of *any* duty (much less a legal one).  *See, e.g., id.* at 13 (citing, among

others, "*United States v. Davis*, 989 F.2d 244, 247 (7th Cir. 1993) (Posner, J.) (reversing federal

bank fraud conviction because the government failed to prove that the defendant's

misrepresentations in opening an account in the name of a mythical company was material to the

bank's decision to allow him to deposit a wrongly obtained IRS refund check)").

     Ring's analysis here is confusing at best.  The heading for Section A.1 of his revised

motion reads, "To Be Material Any Alleged Misrepresentation Or Act of Concealment Must

Violate A *Legal Duty* To The Alleged Victim Of The Fraud."  (Emphasis added).  And indeed,

this assertion is a major premise of his materiality argument, but the pages that follow say

nothing about duty, let alone a legal duty.  Rather, the pages and citations that follow simply

restate the undisputed definition of materiality: "any misrepresentations or acts of concealment

had a natural tendency to be capable of deceiving the public."  *See id.* at 14.  This undisputed

definition of materiality is noticeably silent about duty.

     Moreover, while the heading for Section A.2 of Ring's revised motion reads, "To Be

Material, Any Alleged Misrepresentation or Act of Concealment Must Violate A *Legal Duty* to

the Public" (emphasis added), and this assertion is another major premise of his materiality

argument, the pages that follow again say nothing about a legal duty.  In fact, none of the many

cases Ring cites in his motion support this proposition, or even mention a legal duty.  Instead,

Ring follows his legal analysis on the topic with the unsubstantiated conclusion that, "In other

words, any alleged misrepresentation or act of concealment must violate a *legal duty* to the

public." *See* Ring Revised MJOA (Dkt. No. 155 at p. 14) (emphasis in original).  Ring

emphasizes the one word absent from the legal authority he relies on—*legal*—which is why he

must begin this concluding sentence with the phrase, "In other words."  *See* Ring Revised MJOA

(Dkt. No. 155 at p. 14).  Ring cannot conjure a "legal duty" by paraphrasing case after case that

disagrees with his legal proposition.

     Going well beyond the limited purpose for which the Court allowed him to renew his

motion for judgment of acquittal, Ring tries to resuscitate an issue the Court long ago decided

against him: that the Government failed to prove that he owed the United States and its citizens a

duty of honest services.  It is well-established that a private individual can be convicted under

§ 1346 of scheming to deprive another of her right to an elected official's honest services.  *See,

e.g., United States v. Harvey*, 532 F.3d 326, 331-32 (4th Cir. 2008); *United States v. Kemp*, 500

F.3d 257, 264, 278 (3d Cir. 2007) (cited favorably by *Skilling*, 2010 WL 2518587, at *49) ;

*United States v. Walker*, 490 F.3d 1282, 1287 (11th Cir. 2007); *United States v. Potter*, 463 F.3d

9, 13 (1st Cir. 2006); *United States v. Hasner*, 340 F.3d 1261, 1261-62 (11th Cir. 2003) (per

curiam); *United States v. Lopez-Lukis*, 102 F.3d 1164, 1165 (11th Cir. 1997); *United States v.

Sawyer*, 85 F.3d 713, 719-20 (1st Cir. 1996); *cf. United States v. Panarella*, 277 F.3d 678, 679

(3d Cir. 2002) (rejecting businessman's appeal that his guilty plea to being an accessory after the

fact to honest-services wire fraud lacked an adequate factual basis).

     Moreover, because much of Ring's argument that materiality requires the violation of a

legal duty is based on *Safavian*, his argument suffers from the same fatal flaws identified above.

Thus, the existence of a legal duty, let alone the violation of a legal duty, is not required to

satisfy the element of materiality.

The Government does not have to prove that Ring personally owed the United States and its citizens a duty of honest services. Honest services fraud charges participation in a scheme to defraud another of the intangible right of honest services. A participant in such a scheme is no less culpable if he does not personally owe a duty of honest services. The Government has never been required to prove such an element, and Ring cites to no authority for such a bold proposition. In fact, this Court has already recognized that:

> The mail and wire fraud statutes have long been used to prosecute private participants in schemes to deprive the public of an official's honest services. In fact, "neither the language nor the policy of the wire-fraud statute" requires that one of the parties to the scheme be a public official.

*United States v. Ring*, 628 F. Supp. 2d 195, 210 (D.D.C. 2009) (citations and alteration omitted) (quoting *Potter*, 463 F.3d at 16). Ring's position contravenes the well-established principle that honest services fraud applies to the conduct of non-public officials, and his argument should therefore be rejected.

C.     Because a Defendant is Liable for the Acts of His Co-Conspirators, the Government is not Required to Prove that Ring Aided and Abetted a Material Misrepresentation, Concealment, Omission, or Fraudulent Pretense

Ring argues that in order to satisfy the materiality element, the Government must prove that he either personally performed a material misrepresentation in violation of a legal duty, or that he aided and abetted a public official's material misrepresentation in violation of a legal duty. *See* Ring Revised MJOA at 5-10. As noted above, this position ignores the word, "scheme," in § 1343 and contravenes this Court's previous rulings. Honest services fraud charges a scheme to defraud, and there is not a single court that has held that a knowing participant is required to have personally performed an act that satisfies each element of the offense. Any contrary ruling would permit co-conspirators to escape culpability under honest services fraud through the segregation and delegation of corrupt conduct.

Ring also conjures up the legal requirement that in order for the honest services charges to survive a Rule 29 motion, Ring must have "aided and abetted" a public official in violation of that public official's legal duty. While the requirement of a legal duty is without legal support, so is Ring's claim that a material misrepresentation is linked to the "aiding and abetting" theory of criminality. Ring argues that to be held liable for an honest services fraud scheme, he must also be held liable under an aiding and abetting theory requiring the jury to find the following: (1) the specific intent to facilitate the commission of a crime by another, (2) guilty knowledge (3) that the other was committing an offense, and (4) assisting or participating in the commission of the offense. Ring is mistaken. All that is required for a defendant to be liable is that the co-schemer's conduct be reasonably foreseeable.

In the context of a wire fraud scheme, for example, in order to satisfy the element that a wire was used the jury need only find that a co-conspirator *caused* a wire to be used in commission of the scheme, even if the individual who personally used the wire was not aware of the criminal conduct or did not have the intent to commit a crime. *See, e.g., United States v. Muni*, 668 F.2d 87, (2d Cir. 1981) (discussing applicability of wire fraud schemes for the wiring by an aider and abetter compared to a situation when defendant caused an innocent third party to send a wire in furtherance of the scheme). Consequently, the very premise of Ring's arguments that the Government had to prove "aiding and abetting" to prove a scheme to defraud is entirely misplaced. The Government need not prove that Ring "aided and abetted"; rather, the Government need only prove that Ring or a co-conspirator caused the action in furtherance of the scheme, whether using a wire or filing a false financial disclosure form.

More fundamentally, because honest services fraud charges participation in a scheme, the charge is more appropriately analogous to a conspiracy. Indeed, this Court has already adopted the view held in the Ninth Circuit that a knowing participant in a fraud scheme can be

vicariously liable for acts of a co-schemer, without the government having to prove that the

defendant aided and abetted the wire fraud. *United States v. Ring*, 628 F. Supp. 2d 195, 218 n.15

(D.D.C. 2009).  In rejecting Ring's assertion that certain honest-services counts should be

dismissed because he did not personally "cause" the wires in question, this Court explained that,

"[l]ike co-conspirators, knowing participants in the scheme are legally liable for their co-

schemers' use of the mails or wires." *Id.*  Therefore, this Court found that even if Ring did not

cause the wires, he "would be liable for them to the extent that they were caused by one of his

alleged co-schemers." *Id.* at 218 n.15 (citing cases in which courts have applied co-schemer

liability in mail or wire fraud cases).  The same analysis controls with respect to materiality.

Thus, using the Court's own language, "[Ring] is legally liable for [his] co-schemers' [material

misrepresentations, concealments and omissions, and fraudulent pretenses]."

Because the Court has already adopted the Ninth Circuit's approach, a closer look at its

cases will prove helpful.  In *United States v. Lothian*, 976 F.2d 1257 (9th Cir. 1992), the Ninth

Circuit applied the principle of vicarious liability through a conspiracy to mail and wire fraud

and held that a knowing participant in a scheme to defraud can be held liable for the acts of his

co-schemers.  There, the defendant was convicted, along with several others, on numerous

substantive mail and wire fraud counts.  Notably, he was not charged with conspiracy.  The

court, however, drew analogies between mail and wire fraud co-schemer liability and liability for

conspiracy and consequently rejected Lothian's contention that he cannot be found liable for the

acts of his co-schemers.  The court explained:

> Mail and wire fraud share as a common first element the existence of
> a scheme to defraud, which, when more than one person is involved,
> is analogous to a conspiracy.  The second element is using or causing
> the use of the mails or wires in furtherance of the scheme.  The
> defendant need not personally have mailed the letter or made the
> telephone call; the offense may be established where one acts with
> the knowledge that the prohibited actions will follow in the ordinary

17

> course of business or where the prohibited acts can reasonably be
> foreseen.

*Id.* at 1263.  Because honest services fraud charges a scheme, the *Lothian* analysis applies with

equal strength to every element of the offense.  Therefore, because using a wire in furtherance of

the scheme is an element of the offense against Ring, and because Ring does not have to

personally use a wire in furtherance of the scheme in order for the element to be satisfied, it

logically follows that Ring also does not have to personally perform any act that satisfies the

element of materiality, so long as he is a knowing participant in the scheme.  On this point, the

*Lothian* court continued:

> Because an essential element of these offenses is a fraudulent
> scheme, mail and wire fraud are treated like conspiracy in several
> respects.  Similar evidentiary rules apply.  Just as acts and statements
> of co-conspirators are admissible against other conspirators, so too
> are the statements and acts of co-participants in a scheme to defraud
> admissible against other participants.   We also apply similar
> principles of vicarious liability.   Like co-conspirators, knowing
> participants in the scheme are legally liable for their co-schemers' use
> of the mails or wires.

*Id.* at 1262-63.  Notably, this Court cited *Lothian* with authority in its decision denying Ring's

motion to dismiss certain honest services fraud counts because he did not personally "cause" the

wires in question.  *United States v. Ring*, 628 F. Supp. 2d 195, 218 n.15 (D.D.C. 2009);[4] *see also*

*United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002) (ruling that vicarious liability

applies for acts taken in furtherance of the scheme while the defendant was a knowing

participant); *accord United States v. Siegelman*, 561 F.3d 1215, 1230 (11th Cir. 2009); *United*

---

[4]The "legal duty" section of Ring's motion suffers from the same fatal flaw, in addition to the deficiencies described above.  In his motion, Ring says that "Common sense would dictate that absent an unambiguous, affirmative legal duty of Mr. Ring to disclose particular information to the public, it did not have a 'right' to the information."  Ring Revised MJOA at p. 16.  Again, Ring has been charged with knowingly participating in a scheme to defraud, so non-disclosure by a co-conspirator is equally sufficient to satisfy the element of materiality, even though no "affirmative duty to disclose particular information to the public" is required.

*States v. Stull*, 743 F.2d 439, 442 (6th Cir.1984); *United States v. Sedovic*, 679 F.2d 1233, 1238-39 (8th Cir. 1982); *United States v. Read*, 658 F.2d 1225, 1239 (7th Cir. 1981); *United States v. Toney*, 598 F.2d 1349, 1355 (5th Cir. 1979); *see also United States v. Leahy*, 445 F.3d 634, 656 (3d Cir. 2006) (assuming arguendo that Ninth Circuit's approach was correct); *United States v. Hanley*, 190 F.3d 1017, 1022 (9th Cir. 1999) ("Co-schemers in a scheme to defraud may be vicariously liable for the acts of their co-schemers.").

Moreover, Ring does not need to be a fiduciary in order to be held liable under § 1346. *See Skilling*, (language about third party not deceived). Any contrary position would permit a non-public official to escape charges under honest services fraud, even though he may have initiated the scheme to defraud and bribed numerous public officials, a notion unequivocally inconsistent with pre-*McNally* case law. As noted above, because the statute criminalizes a "scheme to defraud," the defendant himself need not be a fiduciary. Instead, the Government is only required to prove the existence of a scheme to defraud and the defendant's knowing participation in that scheme. *See, e.g., United States v. Alexander*, 741 F.2d 962, 964 (7th Cir. 1984) ("There can be no doubt that a non-fiduciary who schemes with a fiduciary to deprive the victim of intangible rights is subject to prosecution under the mail fraud statute . . . ."), overruled on other grounds; *United States v. Lovett*, 811 F.2d 979, 984 (7th Cir. 1987) (upholding the conviction of a lawyer guilty of mail fraud for bribing mayor, and thereby depriving the citizens of their right to the mayor's honest services); *United States v. Gray*, 790 F.2d 1290, 1295 (6th Cir. 1986) (upholding the honest services fraud conviction of a non-fiduciary who participated in a kickback scheme with a public official); *United States v. Urciuoli*, 2010 WL 2814311 at *13-15 (1st Circuit July 20, 2010) (rejecting Urciuoli's argument that *Skilling* limits "the mail fraud statute in honest services cases to cover only the party to a bribe who owes a fiduciary duty to the public" and ruling that "courts . . . have consistently construed 'scheme' . . . to mean that

19

those who bribe public officials take part in a scheme to deprive the public of the honest services of those they attempt to influence"). In fact, the public official who owes a fiduciary duty to the public need not even be a party to the scheme. *See Potter*, 463 F.3d at 16 (upholding the honest services fraud conviction of a businessman who schemed to bribe a state Speaker of the House, ruling "that [official] might prove unwilling or unable to perform, or that the scheme never achieved its intended end, would not preclude conviction"). Therefore, the Government is not required to prove that Ring aided and abetted a public official's material misrepresentation, concealment or omission, or fraudulent pretense; proof of Ring's knowing participation in a scheme to defraud is sufficient.

     D.    <u>The Government Satisfied the Materiality Element</u>

As noted above, the Court's jury instructions contain several disjunctive predicates sufficient for satisfying the element of materiality: misrepresentation, false statement, concealment or omission of a material fact, and fraudulent pretense. While the Government is only required to have established one of these predicates, it provided evidence at trial sufficient to establish all of them.[5]

*1.   Material Misrepresentation*

At trial the Government provided substantial evidence that Ring's scheme to defraud included the filing by public official co-conspirators of forms that misrepresented material information.

    <u>a.</u>    <u>False Financial Disclosure Forms</u>

At trial, the Government presented proof that numerous public officials submitted false financial disclosure forms omitting the receipt of things of value provided by Ring and his co-

---

[5]The Government also reincorporates the arguments and evidence cited in Docket 145, Government's Opposition to the Judgment for Acquittal.

conspirators.  The Government presented proof, for example, that Congressman John Doolittle, David Lopez, Bob Coughlin, and John Albaugh all submitted financial disclosure forms that falsely stated they did not receive numerous things of value from Ring and his co-conspirators.

On the last day of the Government's case, the jury saw evidence of tickets that Doolittle, Lopez, Coughlin, and Albaugh received that should have been disclosed on their financial disclosure forms.  (GX 197, 317A, 318, 333, 333A, 337, 428, 435, 534A, 608;  9/29/09 AM Tr. at 26-41 (LoStracco)).  A reasonable juror could easily have found that the receipt of these tickets was material to the public or to the public officials' employers— for Coughlin, the Department of Justice; for Albaugh, Representative Istook.

As noted above, the Government is not required to prove that Ring aided and abetted the filing of these false financial disclosure forms.  Instead, the required causation for a scheme to defraud is reasonable foreseeability.  Naturally, it was reasonably foreseeable to Ring that these public officials would file false financial disclosure forms as part of the scheme to defraud. Otherwise, the scheme would not have been successful.

Moreover, as noted below, Ring and his co-conspirators knew these public officials would conceal this material information, and Ring affirmatively assisted them in this concealment.  These acts certainly make it reasonably foreseeable that filing false financial disclosure forms by public officials would be a part of the scheme to defraud.  Therefore, the Government provided sufficient evidence to satisfy the material misrepresentation predicate of materiality.

### 2.   *False Statement*

The evidence of material misrepresentations described above also satisfies the false statement predicate of materiality, since the filed forms contain false statements about material facts.

### 3.     *Concealment/Omission of a Material Fact*

Ring's scheme to defraud included the concealment and omission of numerous material facts.  At trial the Government provided substantial evidence that Ring and his co-conspirators disguised the description of things of value and the identities of the recipients in order to conceal the fact that Ring and his co-conspirators were providing bribes to public officials.

### a.     The Use of Code Words to Describe Things of Value

A reasonable juror could find that Ring's use of code words to disguise the description of the things of value were material to the public or the public officials' employer.   For example, the jury saw e-mails between Ring and White House employee Jennifer Farley describing tickets to concerts and sporting events as "fruit" in order to disguise their true nature.  (GX 821, GX 853, GX 854.)  Discussing those e-mails, Neil Volz testified that he, Ring, and their co-conspirators "were all generally concerned about e-mailing with people in the White House, as the White House has a recordkeeping process.  So we needed to be concerned about what we said on e-mail."  (9/15/2009 AM Tr. at 86.).  Volz testified that Ring told him he used this code word, "fruit," "[b]ecause of the White House recordkeeping on their e-mails."  (9/15/2009 AM Tr. at 89.)

Highlighting the need for secrecy and attempts to conceal their actions, Ring emphasized that putting explicit e-mails about lobbying in the White House e-mail system could actually undermine the scheme to defraud.  In an e-mail to Jack Abramoff on February 7, 2003, Ring himself corroborated Volz's testimony, writing:

> Your email to Susan was forwarded to Ruben Barrales and on to Jen Farley, who read it to me last night.  I don't know what to think about this, but she said *it is better not to put this stuff in writing in their email system* because it might actually limit what they can do to help us, especially since there could be lawsuits, etc.  Who knows?  Just letting you know what she said.

22

(GX 855) (emphasis added).  Between the e-mails themselves and Volz's testimony, a rational

factfinder could reasonably infer that Ring used the term, "fruit," to conceal his scheme to

defraud from Farley's employer—the White House—and, more generally, from the public.

In his revised motion, Ring argues that because Farley initiated the use of the term,

"fruit," this act cannot be construed as a material concealment against Ring.  *See* Ring Revised

MJOA at 18 n.5.  This argument, however, should be rejected because Farley was a participant

in the scheme, Ring also used the term, "fruit," to conceal the things of value, and the fact that

Ring was providing things of value to Farley in exchange for her performance of official acts

was clearly material to Farley's government employer and to the public.

b.      The Destruction of E-mails

The jury also observed evidence of Ring's apprehension regarding the disclosure of

sensitive conversations with his public official co-conspirators.  For example, in an e-mail chain

with David C. Mielke, a lawyer for the Pueblo of Sandia Native American Indian tribe, Ring

described a conversation he had had with John C. Albaugh, Chief of Staff to then-U.S.

Representative Ernest J. Istook Jr.:

> I just got a note from Istook's Cos asking for the description of [the]
> I-25 tramway project.  I hope that is a good sign.  Trans Approps
> marks up tomorrow.  I worry that [then-U.S. Representative Heather
> A.] Wilson asked for [a] bigger project—I-25 from Tramway through
> Bernalillo.  I told CoS that was too expensive and just to do our piece
> and that Wilson would be okay with that.  *Maybe you should delete
> this email after reading it.*

(GX 147A) (emphasis added).  Similarly, as discussed above, in GX 855, Ring was fully aware

that making requests to public officials in an e-mail could undermine the scheme to defraud.

Consequently, a rational jury could easily find that Ring and his co-conspirators made material

misrepresentations and concealments in furtherance of the scheme in order to prevent truthful

and material information from being disclosed to the public and the public official's employer.

23

<u>c.</u>     <u>Concealment of Identities</u>

In addition to concealing the things of value, Ring and his co-conspirators concealed the identities of the recipients of things of value.  For example, then-U.S. Representative John T. Doolittle's Legislative Director, Gregory J. Orlando, made explicit his belief in the need for secrecy.  On November 19, 2003, after e-mailing Ring about official business, Orlando e-mailed Ring, "[H]ey—what are the chance[s] of you getting me courtside for knicks-wiz (march 7)?  *of course, this transaction would be covert*[,] as i[']ll get fired."  (GX 399A.)  Ring responded simply, "2 or 4?"  (*Id.* (emphasis added)).

And in January 2001, Ring, Abramoff, and Boulanger invited several public officials to attend the Super Bowl.  When some of those public officials asked whether the trip complied with House and Senate ethics rules, Ring and Boulanger tried to manufacture a legitimate basis for the thing of value.  The original idea was for the trip to be part of a fundraiser for a Member of Congress.  By January 22, 2001, however, it was becoming uncomfortably clear that this ruse would not be successful.  (9/24/2009 PM Tr. at 25-26 (Boulanger)).  Nevertheless, when Ring e-mailed Boulanger that day to coordinate calling the House and Senate ethics offices, he instructed Boulanger, "Describe what event is—fundraiser— and tell them [S]enate staff was invited.  Just don't give names."  (GX 1036.)  A reasonable jury could find and infer that Ring concealed the public officials' names from the ethics offices as part of his scheme to defraud.

Ring and his colleagues also took steps to disguise the fact that their guests were public officials.  (9/14/2009 AM Tr. at 41 (Schuelke).  Ring and his co-conspirators repeatedly disguised the actual recipients of the things of value on their various expense reports.  *See, e.g.*, GX 586b ("DOJ officials"), GX 1124, ("Signatures with various Hill/Admin officials") 1126A ("Signatures with various Hill/Admin officials").  Similarly, Ring and his co-conspirators would conceal the identify of a congressional staffer on billing records as a "conservative activist."

(*See e.g.*, GX 1129, 1135; 9/14/09 AM. Tr. at 40 (Schuelke).)  Ring also resisted giving to

Greenberg Traurig LLP's accounting department a list of public officials he had been taking to

restaurants and games because he did not want to put his public official "friends in a bad spot."

(9/14/2009 AM Tr. at 95 (Volz).)  Todd Boulanger agreed, e-mailing Ring that he would "not

put names on a receipt, ever."  (GX 80.)  A reasonable juror could conclude that these

concealments were material to the public and to the public officials' employer.[6]

       *3.*      *Fraudulent Pretense*

As noted above, *Skilling* is unequivocal that materiality can be established merely "in the

continued representation of the [public official] to the [public] that he is honest and loyal to the

[public's] interests."  *Skilling*, 2010 WL 2518587 at *36 (citing *United States v. Proctor &*

*Gamble Co.*, 47 F. Supp. 676, 678 (D. Mass. 1942)).

       a.      Helping Public Officials Fabricate a Politically Acceptable
               Explanation for their Conduct

Ring's scheme to defraud included actions by lobbyists to help public officials

manufacture a politically acceptable explanation for their conduct.  The jury was presented with

evidence that Ring and his co-conspirators provided "public" reasons that officials could use for

supporting a position that contrasted sharply with the "private reasons" that were the real

motivations.  The Super Bowl trip described above is a prime example.

In his revised motion, however, Ring argues that:

> [T]his is nothing like the sort of *factual* misrepresentation necessary
> to satisfy the materiality element under *Neder*, and having courts

---

[6] Ring repeatedly relies upon *United States v. D'Amato*, 39 F.3d 1249 (2d Cir. 1994) for the proposition that incorrect billing does not rise to the level of honest services fraud.  *D'Amato*, however, was focused on how fraudulent billing impacted private honest services fraud under the "right to control theory" of corporate shareholders.  *Id.* at 1257.  Such a theory of prosecution is fundamentally different than a bribery theory of a public official, and, consequently, Ring's reliance on *D'Amato* is without merit.

> adjudicate whether a material misrepresentation or act of concealment occurs when an elected public official's stated justification for official action is different from their 'real' motivation comes uncomfortably close to inviting 'questioning' of Members of Congress for their official acts, in violation of the Speech or Debate Clause of Article I, Section VI of the Constitution.

Ring Revised MJOA at 28.  Ring presents this argument despite the fact that just five pages earlier he says the following:

> If the Court is wondering what aiding and abetting a false disclosure form would look like, the testimony of Mr. Volz provided a perfect example.  On cross-examination, Mr. Volz admitted that he had aided and abetted Mr. Ney in filling out a false disclosure form in connection with their Scotland trip, explaining that he had given Mr. Ney false numbers to enter onto the disclosure form that would have the "appearance of being justifiable."

Ring Revised MJOA at 23 n.9.  Ring's internal inconsistencies are unignorable.  If helping a public official manufacture a publicly acceptable reason for accepting a thing of value is sufficient to satisfy the element of materiality for Volz, then it is sufficient to satisfy the element of materiality for Ring.

Ring also warns that using a public official's public reason for an act as evidence to satisfy the element of materiality converts honest services fraud into a limitless statute:

> If a politician's 'public justification for his or her official acts can be characterized as a misrepresentation any time it is different from the politician's 'real' motivation for the official act—in other words, any time a politician seeks to put a more favorable spin on what he or she is doing—there is no limit to the sorts of prosecutions that can be brought under this [honest services fraud] statute despite the Supreme Court's efforts to provide strict limitations in *Skilling*.

p. 28.  This alarmist concern is misguided.  While the false pretense of a public act may be sufficient to satisfy one predicate of materiality, it is not necessary to establish a violation of honest services fraud.  On the contrary, this is exactly the type of material misrepresentation, grounded in a fiduciary duty, contemplated by *Skilling*.

### b.     Manufacturing the Pretense of False Motivation

At trial, the Government provided substantial evidence that Ring and his co-conspirators manufactured the pretense of false motivations for public officials' acts. Ring, for example, helped public officials conceal what the jury could consider to be the true motive for helping him and his clients with official acts. The jury was provided with evidence from which they could infer that public officials took official acts because of the things of value that Ring and his co-conspirators provided to them.[7] The jury had to make the determination of whether the official act was taken because of personal friendship or other legitimate reasons or as part of a quid pro quo. A reasonable juror could conclude that official acts were taken as part of a scheme to defraud the public of honest services, when the public officials, by virtue of their position, represented to te public that they were honest and loyal.

For example, when Ring asked Congressman Doolittle to introduce a bill about statehood for Puerto Rico, he tried to send Doolittle on a trip to Puerto Rico to create the appearance that Doolittle had a legislative interest in the issue. Doolittle's Chief of Staff, David G. Lopez, had thought "it would make things easier on Doolittle and them if they c[ould] go to PR [i.e., Puerto Rico] first and then introduce the bill immediately upon returning. It would give them a helpful hook." (GX 314A.)

> It seems that a trip sponsored by one of these groups would better fit with Doolittle's *purported impetus*: namely, that PR is a drain on taxpayers. Being sponsored by a group opposed to statehood also would be good in that it could insulate Doolittle from charges that he is introducing the bill FOR statehooders (why, after all, would they have paid for his trip?).

---

[7] Ring argues that questioning the motivation of a public official somehow threatens the constitutional protections of the Speech or Debate clause of the Constitution. Ring however cites no authority to support this argument, and fails to recognize a long string of cases in which courts have upheld corruption convictions of private citizens that have examined why the public official took an official act.

*Id.* (emphasis added).  The jury could look at the "purported impetus" and "helpful hook" as a material concealment necessary to the quid pro quo of an official act (introducing the bill) for a thing of value (the offer of a trip to Puerto Rico).

<u>c.</u>      The Public Officials' Failure to Disclose the Receipt of Bribes
            Satisfies the Fraudulent Pretense Predicate of Materiality

Finally, as noted above, several public officials were co-conspirators and therefore participants in the scheme.  If fraudulent pretense has any meaning, the mere non-disclosure by these public officials of the fact that they received bribes from Ring and his co-conspirators is sufficient to satisfy the element of materiality.  These public officials owed a fiduciary duty to the public and their government employer.  By virtue of their position and through the performance of their duties, they represented that they were honest and loyal.  Because of the numerous acts of concealment described above, the false pretense that these public officials were honest and loyal was a reasonably foreseeable part of the scheme.  Therefore, the fact that the public officials' acts were motivated by bribes provided by Ring and his co-conspirators was material.  *See Skilling*, 2010 WL 2518587 at *36 (citing *Proctor & Gamble Co.*, 47 F. Supp. at 678); *see also Foxworth*, 2009 WL 1582923 at *366 (holding that a public official's failure to disclose a $3,000 bribe he received from the defendant was sufficient to establish a material omission because, "had the public at large or [the government] known that the [official] . . . was . . . being bribed . . . that knowledge would have had a natural tendency to influence their behavior").  Thus, the non-disclosure of bribes by the public official co-conspirators satisfies the fraudulent pretense predicate of materiality.

In short, the jury had more than enough evidence from which to find and infer that Ring's scheme involved material misrepresentations, false statements, the concealment and omission of material facts, and fraudulent pretenses.  In fact, the evidence showed that the scheme could not

28

have succeeded had the government or the public known that Ring and his co-conspirators were giving public officials a stream of benefits in exchange for official action.  The Court should therefore deny Ring's motion.

E.      <u>Ring's Materiality Arguments Demonstrate a Fatal Misunderstanding of Fraud</u>

In his revised motion, Ring manufactures the untenable argument that because many of the things of value (*e.g.*, dinners, parties, sporting events, concerts, etc.) were enjoyed in the public domain, the Government cannot satisfy the element of materiality.  *See* Ring Revised MJOA at 19-20.  Ring declares that "the government cannot dispute that the public could have seen Mr. Ring with public officials at restaurants, bars and sporting events throughout Washington . . . .").  *Id.* at 20.  The Government does not dispute this fact.  But, more importantly, it is immaterial to the commission of a fraud, particularly a scheme to defraud, whether acts were taken in the public sphere or the private sphere.  There is no evidence that the public knew who was paying for the meals, drinks, and tickets to sporting events and concerts. This absurd position would permit co-conspirators to escape culpability by simply committing any fraud in a public place.  Under Ring's position, the following types of conduct would no longer constitute criminal fraud: (1) a seller's misrepresentation in a public parking lot to a buyer that his car has never been in an accident, (2) an executive's misrepresentation in a restaurant to a potential stockholder that his company has no debt, and (3) the presentment of a false check to a bank, in a bank.  Ring's meritless position should be quickly dismissed.

Ring also mistakenly analyzes the substantive honest services fraud counts separately, arguing that each count should be supported by a separate act that satisfies the element of materiality.  This argument, however, ignores the fact that each substantive count charges a scheme to defraud, and each substantive count is in fact charged as part of the same scheme. While each substantive count may be based on a separate wire, each use of the wire is part of the

same scheme, so one material misrepresentation, false statement, concealment or omission of a material fact, or fraudulent pretense committed in furtherance of the scheme is sufficient to support every substantive count of honest services fraud.  However, as described above, the Government has established many material misrepresentations, false statements, concealments or omissions, and fraudulent pretenses from which a reasonable juror could have found materiality.

**III.    Ring's Argument that the Government Failed to Establish Honest Services Fraud is Based on the Mistaken Belief that *Skilling* Requires the Bribery Scheme to Succeed**

Ring concludes his revised motion by arguing that the Court should grant his motion for judgment of acquittal on the honest services fraud counts because the Government "fail[ed] to show that a public official participated in a bribery scheme by accepting bribes in exchange for a commitment or promise to provide official acts."  Ring Revised MJOA at 31.  Ring argues that *Skilling* requires "the government [] to show active participation in the scheme by a public official.  *Id.* at 32; *see also id.* at 25 ("[T]he Court's decision . . . does require that such a scheme include an actual fiduciary breach of the public trust through *acceptance* of bribes or kickbacks.")  (emphasis added).  *Skilling* requires no such thing, and Ring's position contravenes the plain language of the federal bribery statute.

*Skilling* requires courts to apply standard bribery laws in evaluating bribery honest services fraud charges.  It is well established that bribery prohibits: (A) "giv[ing], offer[ing] or prom[ising] anything of value to any public official," 18 U.S.C. § 201(b)(1); and (B), "demand[ing], seek[ing], receiv[ing], accept[ing], or agree[ing] to receive or accept anything of value" by a public official, 18 U.S.C. § 201(b)(2).  Ring, however, argues that to prove a scheme to defraud, the Government must prove a violation of both §§ 201(b)(1) *and* (b)(2).  Ring's assertion that *Skilling* requires the bribe to succeed ignores a wide body of case law to the contrary, including this Court's prior ruling:

30

> [A]s a matter of law, public officials do not need to be co-conspirators. Private parties alone can conspire to pay illegal gratuities to a public official or to deprive the public of that official's honest services without ever committing the actual offense, and thus without ever interacting with that official. The gratuities provision at issue here, 18 U.S.C. § 201(c)(1)(A), pertains only to those giving gratuities; it is subsection (c)(1)(B), not charged here, that applies to public officials who accept gratuities. A conspiracy to give a gratuity therefore does not require that a public official be part of the conspiracy. Similarly, the honest services statute does not require that a public official be among the schemers, and so a conspiracy to devise a scheme requires no public official's participation.

*United States v. Ring*, 628 F.Supp.2d 195 (D.D.C. 2009) (citing *Potter*, 463 F.3d at 16-17). The same analysis applies with equal force to honest services fraud. *Skilling* does not require the participation of a public official in the scheme to defraud. *See Urciuoli*, 2010 WL 2814311 at *13-15 (recognizing that "courts . . . have consistently construed 'scheme' . . . to mean that those who bribe public officials take part in a scheme to deprive the public of the honest services of those they attempt to influence").

This interpretation of *Skilling* is consistent with the Supreme Court's prior rulings that honest services fraud does not require the scheme to succeed. The Supreme Court has consistently—and unequivocally—ruled that honest services fraud does not require the scheme to succeed. In *Neder*, for example, the Court said that "[b]y prohibiting the 'scheme or artifice to defraud,' *rather than the completed fraud*, the elements of reliance and damage would clearly be inconsistent with the statutes Congress enacted." *Neder*, 527 U.S. at 25 (emphasis added); *see also Potter*, 463 F.3d at 16 (holding that a public official does not even have to participate in the scheme in order to establish honest services fraud). In *Pasquantino v. United States*, 544 U.S. 349 (2005), the Court said that "the wire fraud statute punishes the scheme, not its success . . . ." *Id.* at 371 (citations & quotation marks omitted). And in *United States v. George*, 477 F.2d 508 (7th Cir. 1973), the Seventh Circuit said that "since the gravaman of the offense is a 'scheme to

defraud, it is unnecessary that the Government allege or prove that the victim of the scheme was actually defrauded or suffered a loss . . . ." *Id.* at 512; *see also* 18 U.S.C. §§ 1341 & 1343 (permitting conviction of anyone who, "having *devised or intending to devise* any scheme or artifice to defraud," causes a mailing or interstate wiring in furtherance of the scheme) (emphasis added).

Nothing in *Skilling* altered the well-settled understanding that the mail and wire fraud statutes punish "schemes" to defraud. The reason is very simple. The scheme itself presents the potential for harm and threatens the integrity of our government. It would make no sense for Congress to lawfully permit a failed attempt to defraud but criminalize a successful attempt to defraud. Indeed, that is why the statute criminalizes the scheme, rather than the successful completion of the scheme. Therefore, Ring's argument that the Government failed to satisfy *Skilling* because it failed to prove the successful completion of a scheme is without merit. Ring's position misconstrues *Skilling*, ignores the decision of every court that has considered this issue, conflates § 201(b)(1) with § 201(b)(2), and is inconsistent with this Court's prior rulings. Thus, this argument should be soundly rejected.

## IV.    Conclusion

Ring's interpretation of honest services fraud is inconsistent with *Skilling* and in contravention of pre- and post-*McNally* case law. Materiality does not require the existence of, or violation of, a legal duty. And because the statute charges participation in a scheme, it is not necessary for the defendant to personally perform, or personally aid and abet the performance of, each element of the offense. Finally, *Skilling* does not require that the scheme to defraud be successful in order to support a conviction under honest services fraud. Ring's analysis reflects such a fundamental misunderstanding of bribery and post-*Skilling* and pre-*McNally* honest services fraud that his revised motion for judgment of acquittal can easily be dismissed.

Early in his revised motion, Ring describes the Government's theory of honest services fraud as "bribery-lite."  *See* Ring Revised MJOA at 2.  Make no mistake, the Government's interpretation of honest services fraud, and the Government's theory of the case as presented to the jury, is more accurately described as "bribery plus."  A bribery theory of honest services wire fraud requires proof that Ring participated in a scheme to bribe public officials, that one of the participants of the scheme used a wire in furtherance of the scheme, and that one of the participants made a material misrepresentation, omission or concealment of a material fact, false statement, or fraudulent pretense.  The Government presented sufficient proof to permit a reasonable juror to find that Ring joined such a scheme and that the Government satisfied each element.  In fact, a reasonable juror could have concluded that the success of Ring's scheme to defraud was dependent upon fraudulent pretenses and the concealment of material facts.

*Skilling* instructs that "[a] criminal defendant who participated in a bribery or kickback scheme, in short, cannot tenably complain about prosecution under § 1346 . . . ."  *Skilling*, 2010 WL 2518587, at *49.  At trial, the Government presented substantial evidence that Ring participated in a bribery scheme.  Ring, therefore, has no basis to proffer untenable complaints that contravene well-established principles of bribery and materiality.  Accordingly, the United States respectfully requests that this Court deny Ring's revised motion for judgment of acquittal.


                                                  Respectfully submitted,

JACK SMITH                                        DENIS J. MCINERNEY
Chief                                             Chief
Public Integrity Section                          Fraud Section


Dated July 27, 2010                    By:    */s/ Peter M. Koski*_____
                                              PETER M. KOSKI
                                              Trial Attorney
                                              Public Integrity Section

U.S. Department of Justice
1400 New York Ave, NW
Washington, D.C. 20005
Ph: 202-307-3589
Peter.Koski@usdoj.gov

NATHANIEL B. EDMONDS
Assistant Chief
Fraud Section

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on this 27th day of July 2010, I caused a true and

correct copy of the foregoing Motion to be electronically delivered to Andrew Wise and Timothy

O'Toole, counsel for Mr. Ring.

_/s/ Peter M. Koski_____
Peter M. Koski
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice