# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                           |   |                              |
|---------------------------|---|------------------------------|
| UNITED STATES OF AMERICA  | ) |                              |
|                           | ) |                              |
| v.                        | ) | Criminal No. 08-274 (ESH)   |
|                           | ) |                              |
| KEVIN A. RING,            | ) |                              |
|                           | ) |                              |
| Defendant.                | ) |                              |

## MEMORANDUM OPINION

On September 5, 2008, a federal grand jury indicted Kevin Ring for acts relating to his lobbying work with Jack Abramoff. A jury trial on Counts I through VIII began on September 8, 2009 that ultimately resulted in a hung jury on all counts. Because seven of the eight counts involved violations of the honest-services wire fraud statute, 18 U.S.C. § 1346, the Court continued the retrial pending a decision from the Supreme Court in *Skilling v. United States*, 130 S. Ct. 2896 (2010), which was handed down on June 24, 2010.

The second trial commenced on October 18, 2010. Ring was charged with payment of an illegal gratuity (Count II), honest services wire fraud (Counts III, IV, V, VI, VII, and VIII), and conspiracy to pay illegal gratuities and to commit honest services wire fraud (Count I). Following a two-week jury trial and four days of deliberation, the jury returned a verdict of guilty on Counts I, II, III, VII, and VIII and a verdict of not guilty on counts IV, V, and VI.

Ring now moves pursuant to Federal Rule of Criminal Procedure 29(c) for a judgment notwithstanding the jury's guilty verdicts on Counts I, II, III, VII & VIII. In the alternative, defendant moves pursuant to Rule 33 for a new trial. Having heard argument on these motions on March 1, 2011 and having considered the entire record herein, the Court will deny both motions.

ANALYSIS

I.  MOTION FOR JUDGMENT OF ACQUITTAL

   A.   Rule 29

Fed. R. Crim. P. 29(c) provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." In reviewing a post-verdict motion for judgment of acquittal under Rule 29, a court "must view the evidence in the light most favorable to the verdict." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983). Such a motion for judgment of acquittal should be denied when the evidence is "sufficient to permit a rational trier of fact to find all the essential elements of the crime beyond a reasonable doubt." *United States v. Cook*, 526 F. Supp. 2d 10, 18 (D.D.C. 2007), *aff'd*, 2009 U.S. App. LEXIS 8384 (D.C. Cir., Apr. 21, 2009) (quoting *United States v. Kayode*, 254 F.3d 204, 212 (D.C. Cir. 2001)). Typically, the jury's determination will stand unless no reasonable juror could have found a defendant guilty beyond a reasonable doubt. *Cook*, 526 F. Supp. 2d at 18.

   B.   **Honest Services Fraud Does Not Require Evidence of an Explicit Quid Pro**

Ring argues that the Court must apply the Supreme Court's decision in *McCormick v. United States*, 500 U.S. 257 (1991), to this case, thereby requiring the government to prove an explicit *quid pro quo* agreement in order to prove honest-services fraud. (Defendant's Motion for Judgment of Acquittal ["MJOA"] at 7-12.) In *McCormick*, the Supreme Court held that campaign contributions enjoyed protection under the First Amendment, and therefore could not service as the basis for a criminal conviction without proof of an explicit *quid pro quo*. *McCormick*, 500 U.S. at 273. The Court, however, explicitly did "not decide whether a quid pro quo requirement exists in other contexts, such as when an elected official receives gifts, meals, travel expenses, or other items of value." *Id.* at 274 n.10. Ring argues that *McCormick* should apply not only to campaign contributions, but also to cases where evidence of illegal activity was

"inextricably intertwined with abundant legal lobbying activity." (MJOA at 9.) Defendant therefore contends that "an explicit quid pro quo standard should have applied even if all evidence of campaign contributions had properly been excluded." (*Id.*) Otherwise, defendant cautions, "the absence of a bright, concrete line between legal and illegal [conduct] . . . would make it too easy for jurors to criminalize constitutionally-protected conduct." (*Id.* at 10.)

As it held prior to the retrial here (*see* Aug. 5, 2010 Tr. at 82), the Court declines defendant's invitation to extend *McCormick* beyond campaign contributions. Such a remedy is neither required by supposed danger of jury confusion nor supported by case law.

The Court provided the jury with repeated *McCormick* instructions throughout the trial to ensure that defendant was not being held criminally responsible for activity protected by the First Amendment. Each time that evidence or testimony touched on a campaign fundraiser or campaign contribution, the Court instructed the jury as follows:

> Campaign contributions and fundraising are an important, unavoidable and completely legitimate part of the American system of privately-financed elections. The law recognizes that virtually every campaign contribution is given to an elected public official because the given supports the acts done or to be done by the elected official.
>
> The Supreme Court of the United States has recognized that legitimate honest campaign contributions are given to reward public officials with whom the donor agrees, and in the generalized hope that the official will continue to take similar official actions in the future.
>
> Lobbyists often donate to the political campaigns of public officials and there is nothing illegal about this practice. Official acts that advance the interest of a lobbyist's clients, taken shortly before or after campaign contributions are solicited or received from the lobbyist, can, depending on the circumstances, be perfectly legal and appropriate.
>
> In this case, the propriety or legality of campaign contributions or fundraisers is not before you, and you are, therefore, instructed not to consider campaign contributions or fundraisers as part of the

3

> illegal stream of benefits that Mr. Ring is charged with providing
> to certain public officials.

(*See, e.g.*, Oct. 25, 2010, A.M. Tr. at 22-23:7-9; Nov. 3, 2010 P.M. Tr. at 34-35.) Indeed, the Court repeatedly, and over the government's strenuous objection, informed the jury that they could not consider campaign contributions as part of the illicit stream of value in this case under any circumstances whatsoever. (*See, e.g.*, Oct. 26, 2010 A.M. Tr. at 15:13-16; Nov. 3, 2010 A.M. Tr. at 59:19-20.) These instructions were also incorporated into various jury instructions as well. (*See* Dkt. No. 222 at 28-30 [Jury Instruction Nos. 27-29].) In sum, although the Court allowed the jury to hear evidence of campaign contributions, the jury was repeatedly instructed that it could not consider such evidence as part of the illicit stream of value – and the Court presumes, as it must, that the jurors followed the instructions they were given. *See United States v. Mouling*, 557 F.3d 658, 665 (D.C. Cir. 2009) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

Moreover, numerous circuits have held that *McCormick*'s explicit quid pro quo requirement does not extend to things of value other than campaign contributions. *See United States v. Kincaid-Chauncey*, 556 F.3d 923, 937 (9th Cir. Nev. 2009); *United States v. Whitfield*, 590 F.3d 325, 352-53 (5th Cir. 2009)[1]; *United States v. Ganim*, 510 F.3d 134, 146-47 (2d Cir. 2007); *United States v. Kemp*, 500 F.3d 257, 281 (3d Cir. 2007). And while the Supreme Court recently held in *Skilling v. United States*, 130 S. Ct. 2896 (2010), that 18 U.S.C. § 1346 criminalizes only schemes to defraud involving bribery or kickbacks, it did not expand the scope

---

[1] Ring suggests that *Whitfield* "assume[d], for the sake of argument, that an instruction on *McCormick*'s *quid pro quo* requirement was required in connection with an honest-services bribery charge." (Defendant's Reply in Support of Motion for Judgment of Acquittal ["MJOA Reply"] at 5.) A closer examination of *Whitfield*, however, reveals that the Fifth Circuit was merely agreeing with the Third and Ninth Circuits' conclusion that while a *quid pro quo* is required, "a particular act need not be identified at the time of payment." 590 F.3d at 352-53 (citing *Kemp* and *Kincaid-Chauncey*).

of *McCormick*, as Ring now urges this Court to do, nor is there any basis to conflate the requirements of *McCormick* and *Skilling*, as Ring has done. *See United States v. Urciuoli*, 613 F.3d 11, 13, 15 n.3 (1st Cir. 2010) (citing holding in *Kincaid-Chauncey* that quid pro quo bribe need not be evidenced by any express agreement or statements of intent).

For these reasons, this Court has previously rejected Ring's previous arguments in favor of expanding the scope of *McCormick* to extend to things of value other than campaign contributions. *See* Aug. 5, 2010, P.M. Tr. at 82:9-14 ("I think there's ample authority that the *quid pro quo* bribery can be inferred from the evidence. You don't need a specific explicit agreement."); *id.* at 30:21-32:6 ("The First Amendment allows you to make campaign contributions and protects that, and so they require explicit quid pro quo. . . . I don't see how that carries to some kind of First Amendment protection for . . . showering people with tickets to the [W]izards. . . . *Kincaid* and *Kemp* and the First Circuit in [*Urciuoli*] . . . all say you don't need an explicit agreement.").[2]

### C. Implicit Quid Pro Quo / Sufficiency of the Evidence

Defendant raises a number of arguments in an attempt to attack the sufficiency of the government's evidence of an implicit *quid pro quo*. As a general matter, Ring's attack on the sufficiency of the evidence is a selective, one-sided attack on particular pieces of evidence, and as such does not faithfully hew to Rule 29, which requires the Court to consider *all* of the evidence in the light most favorable to the verdict.

---

[2] *United States v. Collins*, 78 F.3d 1021, 1034 (6th Cir. 1996); *United States v. Hairston*, 46 F.3d 361 (4th Cir. 1995); and *United States v. Martinez*, 14 F.3d 543, 552 (11th Cir. 1994) are not to the contrary. These cases predate *Kemp*, *Ganim*, *Whitfield*, and *Kincaid-Chauncey*, and generally deal with the distinction between *quid pro quo* and the exchange of things of value for mere "influence," as opposed to the distinction between an explicit and implicit *quid pro quo*. Furthermore, the Supreme Court's grant, vacate, and remand order in *Siegelman v. United States*, 130 S. Ct. 35442 (2010), does not make any mention of *McCormick*, let alone suggest that *Skilling* somehow expanded *McCormick*'s scope in the manner now urged by defendant.

Ring attempts to distinguish this case from *Whitfield*, 590 F.3d 325, *Ganim*, 510 F.3d 134, and *Kemp*, 500 F.3d 257, by comparing the "rare and costly" gifts provided by the defendants in those cases with the relatively inexpensive meals and tickets at issue here. (MJOA at 16.) As the government has correctly pointed out, such an argument confuses evidence *sufficient* to obtain an honest-services fraud conviction with evidence *necessary* to obtain such a conviction. (*See* Government's Response to Motion for Judgment of Acquittal at 18-19.) These cases simply do not stand for the proposition Ring urges: that gifts that nonetheless meet the definition of "things of value" can be sufficiently inexpensive that they cannot imply the existence of a *quid pro quo* as a matter of law. Moreover, the fact that free meals and tickets were "commonplace lobbying tools" is of no moment. (MJOA at 16). Ring was neither charged with nor convicted of the use of such tools, but rather with, *inter alia*, participating in a scheme to exchange things of value for official acts.[3] Defendant counters that "any inference that these gifts *standing alone* can serve [as] bribes" is irrational. (MJOA at 17.) Of course, the evidence of the things of value provided by defendant to public officials did exist in a vacuum; the jury heard nearly two weeks of testimony focused on email communications, much of which was generated by the defendant, and extensive co-conspirator testimony.

Ring attacks the sufficiency of the evidence relating to David Lopez's trip to Puerto Rico, arguing that "the evidence barely showed that Mr. Lopez went to Puerto Rico at all, much less that the trip was a *quid pro quo* bribe." (MJOA at 24.) As an initial matter, the Court notes that no specific count was predicated on this trip—and thus the government's failure to prove that it constituted a *quid pro quo* bribe would not necessarily require a judgment of acquittal on any

---

[3] Moreover, the Court notes that Julie Doolittle's compensation from what the government alleges to be a "little- or no-work job" could hardly be described as a "commonplace lobbying tool," and totaled approximately $96,000. *Cf. Kincaid-Chauncey*, 556 F.3d 923 (upholding honest-services fraud conviction where cash bribes totaled just $18,800).

6

count.  Regardless, Ring's argument suffers from a more serious flaw.  The government was not required to prove what Lopez actually did or did not do on the trip to Puerto Rico.  The relevant issue is whether Ring *intended* to bribe Lopez.  And the government certainly provided the jury with sufficient evidence in the form of emails between Ring and Jack Abramoff from which such intent could be inferred.  (*See, e.g.*, GX-KR 225; GX-KR 226.)

Similarly, Ring attacks the government's evidence that he and Jack Abramoff provided Julie Doolittle with a "little- or no-work job" by focusing primarily on the lack of evidence regarding what work Ms. Doolittle did or did not do.  This misses the point.  Ring was charged with participating in a scheme to defraud, the object of which was for Ms. Doolittle to be paid for doing little or no work.  Again, the relevant issue is *the intent of defendant and his co-conspirators in setting up the job*, not whether Ms. Doolittle in fact "worked sufficiently hard for her money" after she had been given the job.  (MJOA at 21.)  In addition, Ring attacks his conviction on Count VIII based on what he argues was his own limited involvement in setting up the job for Ms. Doolittle.  (MJOA at 19-20.)  This argument fails to appreciate the nature of a "scheme to defraud," as charged in Count VIII.  Honest-services fraud requires only that the government prove participation in a scheme to defraud, and that Mr. Ring participated in that scheme.  Defendant's personal involvement with the details of setting up the job for Ms. Doolittle is irrelevant.[4]  Moreover, Ring's argument ignores the Court's instructions to the jury pursuant to *Pinkerton v. United States*, 328 U.S. 640 (1946), which imputes liability to Ring for the actions of his co-conspirator, Jack Abramoff.  While the number of emails personally sent by

---

[4] Ring's argument that Count VII is based upon an email relating to a fundraiser suffers from a similar defect.  Count VII alleges a scheme to defraud, and as such the email in question need only be in furtherance of the scheme.  There is no requirement that the wire itself must itself establish the necessary *quid pro quo*.

the defendant or his precise level of involvement in the details of setting up the job for Ms. Doolittle are certainly relevant to this issue, they are not dispositive.[5]

Ring continues to argue that *Skilling* requires an honest-services bribery scheme to be *successful*, in that it requires participation of a public official in the scheme. Thus, defendant reasons, the government's failure to show "active participation" in the scheme by a public official by means of "acceptance of bribes or kickbacks" should prove fatal to its case. (MJOA at 3; Dkt. No. 155 at 25, 31-32.) The Court has repeatedly rejected this argument, because it is abundantly clear that honest-services fraud punishes a "scheme to defraud," as opposed to the completed fraud itself. *See United States v. Potter*, 463 F.3d 9, 16 (1st Cir. 2006) (holding that public official does not have to participate in the scheme to establish honest-services fraud by private individuals); *Pasquantino v. United States*, 544 U.S. 349, 371 (2005) ("The wire fraud statute punishes the scheme, not its success." (citations and quotation marks omitted)).[6]

Indeed, this Court has previously held:

> [A]s a matter of law, public officials do not need to be co-conspirators. Private parties alone can conspire to pay illegal gratuities to a public official or to deprive the public of that official's honest services without ever committing the actual offense, and thus without ever interacting with that official. The gratuities provision at issue here, 18 U.S.C. § 201(c)(1)(A), pertains only to those *giving* gratuities; it is subsection (c)(1)(B),

---

[5] The Court further notes that jury's split verdict on the counts pertaining to John Albaugh does not in and of itself merit a judgment of acquittal. *See United States v. Powell*, 469 U.S. 57, 58 (citing *Dunn v. United States*, 284 U.S. 390, 393-94 (1932)).

[6] Thus, the government was required to prove a "two-way nexus," but not in the way Ring argues. (*See* MJOA at 8 (quoting *United States v. Schaffer*, 183 F.3d 833, 841 (D.C. Cir. 1999).) Had the government shown that Ring participated in a scheme to give things of value to public officials with *only* the intent of rewarding past behavior, he could not be found guilty of a bribery (as opposed to an illegal gratuity) scheme. Here, however, the jury's verdict indicates a finding that defendant gave things of value with the intent "to receive an official act *in return for* the receipt by the public official of [the] thing of value." (Dkt. No. 222 [Jury Instruction 42] at 49-50.)

> not charged here, that applies to public officials who *accept* gratuities. A conspiracy to give a gratuity therefore does not require that a public official be part of the conspiracy. Similarly, the honest services statute does not require that a public official be among the schemers, and so a conspiracy to devise such a scheme requires no public official's participation. *Potter*, 463 F.3d at 16-17.

*United States v. Ring*, 628 F. Supp. 2d 195, 219 (D.D.C. 2009). A similar analysis applies to federal bribery statutes. While 18 U.S.C. § 201(b)(1) prohibits *offering* bribes, 18 U.S.C. § 201(b)(2) prohibits *accepting* them. While Ring correctly notes that *Skilling* limited the scope of honest-services fraud to cases involving bribery or kickbacks, it did not, as defendant suggests, somehow require simultaneous proof of § 201(b)(1) *and* (b)(2) in order to successfully prove honest-services fraud.[7] *See Urciuoli*, 613 F.3d at 17 ("The courts . . . have consistently construed "scheme" in this context to mean that those who bribe public officials take part in a scheme to deprive the public of the honest services of those they attempt to influence.") In other words, *Skilling* does not require proof of a "bribery agreement," as defendant contends. (MJOA Reply at 11.) The government need only prove a scheme to defraud, and to do this, it need not call the government officials to the stand.

In essence, defendant's position appears to be premised on an attack on the "retainer" or "stream of value" theory of honest-services bribery. This Court has previously rejected this attack, *Ring*, 628 F. Supp. 2d at 210 (citing *Kemp* and *Ganim*), and this prior ruling was not disturbed by *Skilling*, which cited with approval the same honest-services cases relied upon by this Court. *Skilling*, 130 S. Ct. at 2934. The Court therefore similarly rejects Ring's attempt to establish a test for honest-services fraud that would require the testimony of a public official in

---

[7] Ring's reliance in this motion and at argument on *United States v. Orenuga*, 430 F.3d 1158, 1166 (D.C. Cir. 2005), for the proposition that in a bribery case, "the illegal conduct is taking or agreeing to take money for a promise to act in a certain way" is therefore misplaced (MJOA at 7-8), as Orenuga was charged only under § 201(b)(2).

9

order to secure a conviction. The government is entitled, as it has done here, to rely on cooperators and internal emails from which the jury can infer the existence of a scheme to defraud. Defendant's insistence that the government establish its case in some other manner than the one it chose is inconsistent with Rule 29, which requires the Court to consider *all* the evidence in the light most favorable to the government.

### D. Participation in the Conspiracy

Ring argues that the government failed to establish sufficient evidence "to establish Mr. Ring's knowing and intentional joinder" in a conspiracy agreement. (MJOA at 26.) In support of this argument, Ring asserts that "[w]hat *would* be evidence of a conspiracy is testimony or evidence concerning Mr. Ring's communications from which his joinder into a conspiracy could rationally be inferred." (*Id.* at 27.) Unfortunately for Ring, the government has done just that, and presented the jury with numerous email exchanges between Ring and his co-conspirators and from which the jury could rationally infer that the defendant joined a conspiracy to commit honest-services fraud and illegal gratuities. *See, e.g.*, GX-KR 225-26 (emails between Ring and Abramoff setting up trip for David Lopez); GX-KR 341 (emails between Ring and Abramoff regarding basketball tickets for Robert Coughlin); GX-KR 553 ("I hate when we spend all that money and don't get any return on our investment.").[8]

### E. Illegal Gratuity

Finally, defendant argues that the government's evidence of an illegal gratuity was insufficient as a matter of law. First, Ring renews his earlier assertion that Coughlin did not perform an "official act" as defined by *Valdes v. United States*, 475 F.3d 1319 (D.C. Cir. 2007)

---

[8] As conceded by defense counsel at oral argument, defendant does not take the position that the evidence was insufficient to establish the existence of a conspiracy, only that defendant did not join it.

(en banc). (MJOA at 28-29; MJOA Reply at 2.) This Court previously addressed this argument in response to defendant's Motion to Dismiss, ruling that Coughlin's actions as alleged by the indictment met the definition of an "official act" under *Valdes*. *United States v. Ring*, 628 F. Supp. 2d 195, 204-06 (2009). Having considered the evidence presented to the jury, the Court declines to reverse its previous ruling on this question.

Ring also challenges the sufficiency of the evidence on the substantial causation element established by *United States v. Shaffer*, 183 F.3d 833, 843 (D.C. Cir. 1999). (MJOA at 28-29; MJOA Reply at 2.) The Court instructed the jury consistent with *Shaffer*, *see* Dkt. No. 222 at 58 [Jury Instruction 46] ("you must find that the defendant provided the thing of value for or because of a specific official act performed or to be performed by Mr. Coughlin"), and there was ample evidence presented at trial from which the jury could conclude that Ring provided Mr. Coughlin with basketball tickets "for or because of" his forwarding the email about the Eshkol school. *See, e.g.*, GX-KR 341 ("Bob Coughlin helped on the school and is now looking for tickets to the Wizards on both March 15th and 18th. Do we have 4 tickets available for either or both games?").

## II. MOTION FOR A NEW TRIAL

### A. Rule 33 Standard

Rule 33 of the Federal Rules of Criminal Procedure provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The Rule does not define 'interests of justice' and the courts have had little success in trying to generalize its meaning." *United States v. Cabrera*, 734 F. Supp. 2d 66, 87 (D.D.C. 2010) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)). "Nevertheless, courts have interpreted the rule to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions

during trial." *Id.* A defendant has a heavy burden under Fed. R. Crim. P. 33(a). "[T]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand . . . . This power should be exercised with caution, and is invoked only in those exceptional cases in which the evidence weighs heavily against the verdict." *United States v. Howard*, 245 F. Supp. 2d 24, 30 (D.D.C. 2003) (quoting *United States v. Edmonds*, 765 F. Supp. 1112, 1118 (D.D.C. 1991)).

      **B.**      **No Basis for Arguing Jury Confusion Created by Government "Misconduct" or "Misleading" Evidence**

Ring falls far short of the mark in his attempt to meet his "heavy burden" under Rule 33. He begins by attacking the government's frequent use of "intent to influence" and "intent to reward" as incorrect statements of the governing legal standards. This argument is fundamentally flawed for a number of reasons. As an initial matter, Ring's argument depends on the assumption that the jury did not follow the Court's instructions and instead chose to rely on the government's description. This is not the law. Rather, it is assumed that juries follow the instructions they are given, and there is absolutely no indication here that that did not happen. *See Mouling*, 557 F.3d 658, 665 (citing *Richardson*, 481 U.S. 200, 211).

Moreover, defendant's characterization of the proper legal intent is erroneous and contrary to the final jury instructions. Defendant continues to contend that "unilateral" or "one-sided" intent is insufficient, and therefore, he essentially argues that he can only be convicted of honest-services fraud if the government proves that scheme to defraud was *successful* and that the public official agreed to the scheme. As this Court has repeatedly held, this view of honest-services fraud is incorrect as a matter of law. *See* Dkt. No. 222 [Jury Instruction 42] ("[T]he defendant must intend to receive an official act in return for the receipt by the public official of a thing of value. . . . It is not necessary for the government to prove that the scheme was

12

successful . . . all that must be shown is that things of value were given with the intent of securing an official act or acts in return . . . ."); *Urciuoli*, 613 F.3d 11, 17-18 (approving of instruction requiring jury to find that defendant "intended [a] payment to cause [a public official] to alter his official acts").

Nor was it error for the government to use evidence of campaign contributions in its case. The jury was given repeated and clear *McCormick* instructions each time such evidence was elicited, and as previously held, the jury was told what use it could make of this evidence, so there was no legal basis for its total exclusion on the basis of the possibility of confusion. Again, there is simply no reason to conclude that the jury was incapable of following the Court's instructions.

Similarly, defendant contends that he is entitled to a new trial because the government "prevent[ed] jurors from receiving clear guidance about the *quid pro quo* bribery standard it was compelled to meet by the Supreme Court's *Skilling* decision" and "successfully prevented application of the explicit *quid pro quo* standard of *McCormick v. United States*." It is not error for the government to argue in favor of its preferred interpretation of the law, particularly where, as here, its interpretation is correct. *See supra* Part I.B.[9]

Ring next demands a new trial based on the government's improper question to Mr. Volz, falsely suggesting that the government was in possession of certain evidence. This single event occurring in the middle of a ten-day trial does not rise to the level of prejudice necessary to warrant a new trial. Not only was it immediately followed by curative instructions from the

---

[9] Likewise, it was not misconduct for the government to successfully object to the defendant's misstatement of the law in its opening statement, prompting the Court to provide a cautionary instruction to the jury. As the Court has repeatedly held, the government need not prove a mutual agreement between defendant and the public officials he schemed to bribe. *See supra* p. 9.

13

Court (Oct. 27, 2070 A.M. Tr. at 106:7-10), but in addition, the jury was properly instructed that statements and questions by counsel are not evidence. (Dkt. No. 222 at 10 [Jury Instruction 10].)

Ring chides the government for its "refus[al]" to call any public officials to testify, instead relying on the testimony of two co-conspirators. Of course, the government may not argue materially false statements to the jury that it knows to be false, or suborn perjury from what witnesses it does call. *See Reyes v. United* States, 577 F.3d 1069 (9th Cir. 2009).[10] But this Court is aware of no authority that requires the government to call certain witnesses.[11] Accordingly, defendant is not entitled to a new trial due to the government's use of summary charts, evidence of the inner-workings of Congress, or repeated references to "Team Abramoff." While defendant claims that the government's evidence as to each of these topics misled the jury, it had ample opportunity—which it took advantage of—to cross examine the government's witnesses on these topics.[12]

---

[10] In his motion and during argument, defendant cited *Reyes* in support of his argument that he is entitled to a new trial because of the government's failure to call certain witnesses. (Defendant's Motion for New Trial ["New Trial Mot."] at 15.) But while *Reyes* also involved witnesses called by neither the prosecutor nor the defendant, it was not the failure to call these witnesses that led the Ninth Circuit to remand for a new trial. Rather, it was the prosecutor's blatant misconduct in making false statements of material fact to the jury during closing arguments. *See Reyes*, 577 F.3d at 1076-79.

[11] Indeed, as the government points out, Ring in effect requests not just a new trial, but a new trial where the government is forced to call certain witnesses in its case-in-chief. (*See* Government's Response to Motion for New Trial at 9.)

[12] Additionally, while not required to do so, defendant was also free to call its own witnesses, including the public officials at issue. The Court had previously ruled that David Ayres, Laura Ayres, and Peter Evich could not invoke the Fifth Amendment, and indicated that it would consider the issue as to David Lopez upon request. (Oct. 13, 2010 Tr.) Nor did defendant inquire as to the validity of the Fifth Amendment privileges of Robert Coughlin, John Doolittle, or Julie Doolittle. Contrary to defendant's assertion at argument, *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), does not require otherwise. *Melendez-Diaz* is a straightforward post-*Crawford* Confrontation Clause case, and the sentence fragment defendant quotes out of context does not stand for the broad principle he claims. *Compare* New Trial Mot. at 10-11 ("[T]he Constitution 'imposes a burden on the prosecution to present its witnesses, not

Finally, it was not misconduct for the government to successfully object to defendant's attempt inform to the jury that Congressman Doolittle had not been criminally charged. As the Court previously held in sustaining this objection (*see* Oct. 26, 2010 P.M. Tr. at 28-30), such evidence is simply not probative of defendant's argument that Volz's relationship with Congressman Ney was not comparable to Ring's relationship with Congressman Doolittle, and therefore there is no basis to invoke the doctrine of curative admissibility.

**CONCLUSION**

For the foregoing reasons, the Court denies defendant's motion for a judgment of acquittal and his motion for a new trial. A separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: March 11, 2011

---

on the defendant to bring those adverse witnesses into court.'") *with Melendez-Diaz*, 129 S. Ct. at 2540 ("[T]he *Confrontation Clause* imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court." (emphasis added)).