UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:08-cr-00274-ESH |
| KEVIN A. RING, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## UNITED STATES' NOTICE OF ADDITIONAL AUTHORITIES

The United States, through its undersigned attorneys, respectfully submits this notice of additional authorities pursuant to the Court's specific requests for additional legal authorities during the hearing of August 30, 2011.

Specifically, the Court asked the Government to address the following issues:

I.      What cases discuss stream of benefits bribery for non-honest services corruption charges;

II.     Whether the Court can consider the disparity of sentencing between co-conspirators under 18 U.S.C. § 3553(a)(6) in granting a variance; and

III.    Whether the standard to consider "relatedness" is the same for joinder and for the obstruction enhancement pursuant to U.S.S.G. § 3C1.1.

In addition, the Government provides additional information on two issues identified in Defendant's notice:

IV.     Reasonable Estimate of Benefits: The Government notes one issue in a case cited by both parties in their briefings.

V.      "Retaliation" by the Government:  While the Court specifically instructed the parties only to provide additional citation and not to provide additional arguments, the Defendant nevertheless argues the Government "retaliated" against the defendant for proceeding to

trial.  If necessary, the Government can respond substantively in a full briefing, but in this notice simply corrects misstatements by the Defendant and provides citations to the cases that the Government noted during oral arguments.

### Additional Authorities

#### I. *Stream of Benefits Bribery*

As the Government noted at sentencing, courts have relied upon "retainer" or "stream of benefits" bribery theory in non-honest services fraud cases.  The Government repeats the citations provided in open court.

*United States v. Coyne*, 4 F.3d 100 (2d Cir. 1993) (under the Hobbs Act, the Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was related to his using his influence as specific opportunities arose for the lobbyist).

*United States v. Ganim*, 510 F.3d 134 (2d Cir. 2007) (to obtain conviction for Hobbs Act extortion, it was sufficient for government to prove that former mayor understood that he was expected, as a result of payment, to exercise particular kinds of influence, on behalf of payor, as specific opportunities arose)

*United States v. Bryant*, --- F.3d ----, 2011 WL 3715811 (3d Cir., August 25, 2011) ("Appellants challenge the stream-of-benefits theory: that a bribe may be given in the form of a series of benefits in exchange for official action on an "as needed" basis. Appellants suggest that this theory is indistinguishable from the conflict-of-interest theory of honest services fraud, which was rejected in Skilling as outside the core of honest services fraud.  Nothing in *Skilling*, however, undermines the viability of the stream-of-benefits theory, which this Court first

endorsed in *Kemp*, 500 F.3d 257. *See United States v. Whitfield*, 590 F.3d 325, 352–53 (5th Cir.

2009); *United States v. Ganim*, 510 F.3d 134, 144–47 (2d Cir. 2007); *Urciuoli*, 613 F.3d at

13–14 (confirming stream-of-benefits theory survived *Skilling*). Indeed, *Skilling* did not eliminate

from the definition of honest services fraud any particular type of bribery, but simply eliminated

honest services fraud theories that go beyond bribery and kickbacks. Appellants' reliance on

*Skilling* to undercut the stream-of-benefits theory is thus misplaced.").[1]

## II.       *Disparity In Sentencing Co-Conspirators*

The Court asked the Government to identify whether, under 18 U.S.C. § 3553(a)(6), the

Court could consider the sentences and penalties of other co-conspirators.  As the government

will explain in greater detail in its briefing on the 18 U.S.C. § 3553(a) factors, the Government

submits that for uncharged co-conspirators, the Court can not consider the sentences of others

who have not been charged without violating the separation of powers and infringing on the

discretion of the executive branch.  *United States v. Scott*, 631 F.3d 401, 406-07 (7th Cir. 2011)

(affirming the district court's refusal to consider the lack of charges against co-conspirators,

which would improperly infringe on prosecutorial discretion and thus violate the separation of

powers).

The Government acknowledges that courts have the ability to consider the sentences of

charged co-conspirators in fashioning a sentence for a particular defendant. The Government

notes, however, that 18 U.S.C. § 3553(a)(6) was primarily created for consideration of similarly

situated defendants across the country, and not for a specific comparison of co-defendants.

---

[1]  The Government notes that in the sentencing phase, the district court applied U.S.S.G. § 2C1.1 for the "stream-of-benefits" theory of bribery for the honest services and Hobbs Act convictions.

*United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case. . . . Therefore, a defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences."). *See also United States v. Reiner,* 500 F.3d 10, 17 (1st Cir. 2007); *United States v. Joyner*, 924 F.2d 454, 460-61 (2d Cir. 1991); *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996); *United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007) (holding that § 3553(a)(6) is intended to ensure nationally uniform sentences among like offenders); *United States v. Boscarino,* 437 F.3d 634, 638 (7th Cir.2006) ("[T]he kind of 'disparity' with which § 3553(a)(6) is concerned is an unjustified difference across judges (or districts) rather than among defendants to a single case").*United States v. Mcknight*, 186 F.3d 867, 869 (8th Cir. 1999); *United States v. Garza*, 1 F.3d 1098, 1100 (10th Cir. 1993).

However, "although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so. So long as factors considered by the sentencing court are not inconsistent with those listed in § 3553(a) and are logically applied to the defendant's circumstances," the district court has broad discretion in the statutory range. *Parker*, 462 F.3d at 277. Thus, while the Government submits that the Court should not rely *primarily* upon the sentencing of charged co-conspirators in fashioning a sentence, but the Court has the power to consider the sentencing of charged co-conspirators in crafting a sentence within the statutory maximum.

### III.    *Standards for Relatedness Under Joinder and Obstruction Enhancement § 3C1.1*

The Government has found no case law supporting different standards of relatedness for

joinder and obstruction.  The Government acknowledges the legal issue raised by the Court during oral arguments and recognizes that Ring's false and misleading statements about his receipt of kickbacks may not be best handled under the § 3C1.1. obstruction enhancement, but rather more appropriately analyzed under § 3553(a) factors or after a bench trial on Counts 9 and 10.

## IV.  *Reasonable Estimate of Benefit*

In addition to the cases cited in its previous briefs, the Government notes that a case cited by both parties, *United States v. Whitfield*, 590 F.3d 325, 368 (5th Cir. 2009), held that the correct amount "was the actual amount awarded by [judge] Whitfield in the Marks case ($3.64 million) adjusted by taking into account a reasonable estimate of whatever intrinsic value that case may have had if litigated before an impartial judge." The analysis of the amount of the jury award is focused on the total amount of "intrinsic value," like the total amount awarded by a grant or appropriation, and does not factor in whether it was appropriately awarded (i.e. provided value) or even whether it accurately deducted litigation expenses or other expenses.

## V.  *Government Did Not Retaliate for Defendant's Proceeding to Trial*

In his notice, Ring attempts to addresses the issue of "retaliation" that he raised for the first time in his supplemental briefing, DE 272, to which the Government never had an opportunity to respond in writing.  Unfortunately, rather than following the Court's direction only to provide authorities on the identified topics, counsel for Ring instead chose to further the insupportable argument about "retaliation" by misrepresenting the Government's position. Counsel for Ring stated that the government "acknowledged that its sentencing recommendation is based on the fact that Mr. Ring refused to admit his guilt and unsuccessfully fought charges at

trial." DE 273 at 1.  The Government did no such thing.  Indeed, when counsel for Ring orally made a similar misrepresentation to the Court about the Government's position, the Government specifically denied such a concession and stated that its sentencing position was *not* based on the fact that Ring proceeded to trial.  Counsel for Ring apparently did not recall the Government's repeated statements that its sentencing position was not based on Ring's choice to go to trial, but rather that Ring's sentencing position was different than his co-conspirators because they were not similarly situated, both factually and legally.  The Government identified the following factors, among others, about why the guidelines range was different than the co-conspirators in noting that it was not retaliating against the defendant for proceeding to trial:

1.    Guilty Pleas:  Other co-conspirators pleaded guilty *early* in the investigation and, many of them, *agreed to cooperate* against other culpable individuals by providing additional facts to the investigation.

2.    Scope of Honest Services Fraud: at the signing of the plea agreements and agreement to sentencing guidelines calculations in 2005 to 2008, the scope of honest services fraud included both bribery and undisclosed conflict of interest honest services fraud, which is best captured by U.S.S.G. § 2C1.7.  After *United States v. Skilling,* honest services fraud was narrowed to include only bribery honest services fraud.  Unlike all of the other co-conspirators, Ring was convicted at a time when honest services fraud only included bribery honest services fraud. As the recent changes to the U.S.S.G. makes clear, bribery honest services fraud is appropriately sentenced pursuant to U.S.S.G. §  2C1.1.

3.    Facts Known at Time of Conviction: At the times of the conviction of each of the

co-conspirators in 2005 to 2008, fewer facts about the extent of the corruption conspiracy were known to the government then after the jury returned a guilty verdict against Ring in 2010.  During the course of the investigation, cooperators provided additional facts and additional documents were reviewed that identified with specificity the impact and scope of Ring's corrupt acts, including the impact of Ring's corrupt acts on specific appropriations projects, resulting in the identification of total "benefits."

4.      Nature and Number of Charges: Ring was convicted of more and different charges than any of his co-conspirators, including conspiracy, illegal gratuities and three counts of honest services fraud.  No other defendant was convicted of as many charges or faces a higher statutory maximum.

5.      Contract Principles: The government signed plea agreements with all of the other defendants when there were different circumstances, as identified above.  As noted in its previous briefing, the Government does not have the ability to revise its sentencing position against Ring's co-conspirators - even if a new review of the information could suggest a different applicable set of guidelines.

Thus, contrary to defendant Ring's assertion in his pleading, the Government never acknowledged that it is seeking a higher total offense level or different Guidelines calculation compared with his co-conspirators because of Ring's decision to proceed to trial.  Rather, the Government merely directed the Court to the two Supreme Court decisions that belie Ring's assertion that he is entitled to the leniency and bargained-for benefit of his co-conspirators' decision to plead guilty and cooperate in the investigation and identify additional wrongdoers.

Essentially, Ring's argument is that it is "retaliation" if the Government ever seeks a higher sentence than the sentence to which it agreed for any of his co-conspirators.  Thus, Ring's broad proposition is that the Government's recommended sentence for a defendant's co-conspirator creates a ceiling by which the Government's sentencing recommendation for that defendant can never exceed, even if that defendant's co-conspirator pleaded guilty years earlier in the investigation, cooperated against others, was convicted of different and fewer offenses, pleaded to a narrower factual basis than the conduct for which that defendant was convicted, and executed a plea agreement that bound the Government's sentencing recommendation, and that plea agreement was executed under a different legal regime.  Such an argument is, quite simply, insupportable.

Ring is not entitled to the benefits, or leniency, enjoyed by his co-conspirators who stood in a very different position in 2005 to 2008 than he does in 2011 .  Ring's argument is that any sentence above that recommended for his co-conspirators amounts to "retaliation" for his decision to exercise his constitutional right to go to trial.  Such argument is wildly unfounded and without basis in fact or law.  Ring's claim of "retaliation" for leniency granted to his co-conspirators is inconsistent with Supreme Court precedent and attacks the foundation and spirit of our criminal justice system, and should be soundly rejected.

**CONCLUSION**

The Government provides this additional authority to assist the Court.  If further authorities are requested on topics raised by the Defendant's recent arguments, the Government will promptly provide additional authorities.

Respectfully submitted,

JACK SMITH                                      DENIS J. MCINERNEY
Chief                                                    Chief
Public Integrity Section                       Fraud Section


Dated September 1, 2011            By:      */s/ Nathaniel B. Edmonds*
                                                          Assistant Chief, Fraud Section
                                                          U.S. Department of Justice
                                                          1400 New York Ave, NW
                                                          Washington, D.C. 20005
                                                          Ph: 202-307-0629
                                                          nathaniel.edmonds@usdoj.gov

                                                          PETER M. KOSKI
                                                          Trial Attorney
                                                          Public Integrity Section

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on this 1st day of September, 2011, I caused a true and correct copy of the foregoing Notice to be electronically delivered to Andrew Wise and Timothy O'Toole, counsel for Mr. Ring.

_/s/ Nathaniel B. Edmonds_
Criminal Division
U.S. Department of Justice